UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

OCT 31 2000

MICHAEL N. MILBY, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONSUMERS COUNTY MUTUAL INSURANCE, CO., PLAINTIFF, | § | |
| VS. | § | CIVIL ACTION NO. H-99-3706 |
| P.W. & SONS TRUCKING, INC. AND FRED PAILLET, IV, DEFENDANTS. | § | |

## MEMORANDUM AND ORDER

### I. INTRODUCTION

Before the Court are the opposing motions for summary judgment of the plaintiff, Consumers County Mutual Insurance, Co., ("CCMI") (#24) and the defendant, P.W. & Sons Trucking, Inc., ("PWS") (#25). Also, before the Court is individual defendant, Fred Paillet, IV's, response to CCMI's motion for summary judgment (#32) and the reciprocal responses of CCMI and PWS to the respective motions for summary judgment. The Court has reviewed the pleadings, responses and summary judgment proof and determines that CCMI's motion for summary judgment should be granted and PWS's motion should be denied.

35

## II. FACTUAL BACKGROUND

The facts underlying the basis for this dispute are relatively undisputed. In February of 1998, defendant, Paillet, was contacted and persuaded by PWS to assist PWS with "hauling" loads of cargo in interstate commerce. At the time, Paillet was employed by Conex, a scaffold building company. However, because his work schedule for Conex permitted, Paillet was able and agreed to haul several loads along with Terry Wayne Bob.

The trips involved hauling four separate loads of plastic resin, with the first load to begin at the Petro Truck Stop, in Houston. The final load would originate in Amelia, Texas and end in Middletown, New York. After the final load, Paillet and Bob were on their way back to Texas when an accident occurred. It was on February 23, that Paillet and Bob were involved in a one-vehicle accident in Virginia. However, Bob was driving and Paillet was asleep in the sleeper bunk. Because Paillet was asleep, he did not witness the cause of the accident. Bob was killed and Paillet remained in a coma for two months.

Both Paillet and Bob were occasional drivers for PWS. Their income was derived by a "percentage of the load" formula. The amount that they earned would depend upon the truck's earnings. Thus, Paillet and Bob were not salaried personnel and PWS did not deduct federal withholding or social security taxes from their earnings. The heart of this dispute is the question of the nature of the engagement of Paillet and Bob: were they employees or independent contractors?

## III. CONTENTIONS OF THE PARTIES

### *A. CCMI's Contentions*

CCMI seeks a declaratory judgment via its summary judgment motion that CCMI is not liable to PWS on policy number EFM 11-05-07, which policy provided liability coverage to PWS from December 14, 1997, to December 14, 1998, the relevant period. It is CCMI's position that an exclusion in the policy applies, barring coverage for any PWS employee injured in the course of his employment by PWS. Thus, CCMI seeks a judgment, pursuant to § 37.001 of the Texas Civil Practice & Remedies Code and 28 U.S.C. § 2201, *et. seq.*, that no coverage exists under CCMI's policy, and that the policy does not impose a duty to defend or indemnify any claim(s) arising out of the accident. CCMI also seeks to recover its costs and attorneys fees in the proceeding.

### *B. PWS's and Paillet's Contentions*

The positions of PWS and Paillet are conjoined. PWS asserts by its summary judgment, and Paillet asserts by response to CCMI's motion, that Paillet and Bob had a business relationship with PWS. The fact that Paillet completed an application for employment is of no consequence. He never worked for PWS as an employee. PWS also points to the fact that its insurance carrier rejected Paillet for coverage, due to his driving record.

Both PWS and Paillet contend that Paillet was employed with Conex and with J.P. Trucking. They assert that Paillet could not have an employment arrangement with PWS until Paillet could be covered under PWS's insurance policy. Other factors that PWS point to as evidence that Paillet was not an employee are: (1) Paillet paid for his

own meals; (2) received no vacation or vacation pay; (3) received no health insurance or retirement benefits; (4) chose his own travel route for the deliveries; and (5) was responsible for any fines assessed concerning traffic violations.

## IV. THE POLICY PROVISIONS

PWS's policy provided coverage for certain claims and also excluded others. Section II of the Liability Coverage portion of the policy provides in relevant part:

> We will pay all sums an **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership; maintenance or use of a covered **auto**. (Emphasis supplied).

The policy specifically identifies the tractor involved in the accident in dispute. Thus, barring an exclusion, the vehicle, and resulting injuries and damages are covered. However, Section IIB(3)-5 of the policy sets out exclusions that CCMI relies upon as its defense to indemnification and for providing a defense. The relevant portions are::

> This insurance does not apply to any of the following:
>
> * * *
>
> 3. WORKERS COMPENSATION
> Any obligation to which the **insured** or the **insured's** insurer may be held liable under any workers compensation, disability benefits, unemployment compensation law or any similar law.

4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY

**Bodily Injury to:**

a. An employee of the **insured** arising out of and in the course of employment by the insured; or

* * *

This exclusion applies:

(1) Whether the **insured** may be liable as an employer or in any other capacity; and

* * *

5. FELLOW EMPLOYEE

**Bodily injury** to any fellow employee of the **insured** arising out of and in the course of the fellow employee's employment.

## V. ANALYSIS AND DISCUSSION

### *A. Duty to Indemnify*

The outcome of this dispute, quite obviously, turns on the definition of "employee" and the application of the facts of this case to that definition. Both CCMI and PWS sponsor definitions for the term employee.[1] However, the difference in the

[1]CCMI relies upon a definition cited in the Code of Federal Regulations: Employee means any individual, other than an employee, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (*including an independent contractor while in the course of operating a commercial motor vehicle)*, a mechanic, and a freight handler . . . . 49 C.F.R. § 390.1. PWS relies on state case law interpretation for its definition: Under Texas law, . . . an employee is: "a person in the service of another under a contract of hire, express or implied, oral or written, whereby the employer has a right to direct the means or details of the work and not merely the result to be accomplished." *Thompson v. Travelers Indem. Co.,* 789

language used to define the term "employee" does not change the result. The appropriate result is reached when the relevant facts are applied to the definition.

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Thus, only material fact should govern the outcome of the suit. Material facts are those that affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the case at bar, PWS cites thirteen (13) factors that PWS asserts are relevant to the Court's determination of whether Paillet and Bob were employees or independent contractors (citations omitted). Those factors as recited by PWS are: (1) the extent of the employer's control over the details of the work other than the final results under the agreement; (2) the actual control exercised by the employer; (3) the kind of occupation involved and whether the work is usually done with the employer's supervision; (4) whether the worker is engaged in a distinct occupation or business; (5) the skill required of the worker; (6) whether the employer is or is not in business; (7) the integration of the worker's work in the employer's business; (8) the employer's right to discharge the worker; (9) the worker's opportunity to receive profit and loss from the business; (10) the length of time and permanency of the relationship; (11) whether the worker supplies the instrumentalities of work; (12) whether the parties believe they are creating an

---

S.W.2d 277, 279 (Tex. 1990). An independent contractor is a person who, "In the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control and all its details." *William v. Sommerville & Son, Inc. v. Carter*, 571 S.W.2d 953, 956 (Tex. Civ. App.—Tyler 1978), *aff'd on other grounds*, 584 S.W.2d 274 (Tex. 1979).

employer-employee relationship; and (13) the method by which the worker is paid, whether by the time or by the job.

Except for factors 9, 10, 12, and 13, the relationship between PWS's confirmed or admitted employees and Paillet and Bob are the same. The remaining factors, therefore, are whether the worker has an interest in the profits and losses of the business, the length of time of the relationship, the intentions of the parties, and the manner of compensation of the worker. And, finally do these factors tip the scale and compel the "only one reasonable conclusion" that Paillet and Bob were independent contractors. *See PWS's Motion for Summary Judgment* (citing to *Brinkley v. Almond*, 685 S.W.2d 446, 448 (Tex. App.— San Antonio 1985, no writ)). The Court is of the opinion that these factors, even if favorable to PWS, do not compel the result argued by PWS. The Court reaches this conclusion, that Paillet and Bob are not independent contractors, because the four factors that are distinguishable, deal primarily with compensation and term of engagement.

In this case, control over the details of the work, lack of supervision, whether the worker is in business, the skill required of worker, whether the employer is in business, the integration of work, the employer's right to discharge employee, and who supplies instruments of work, are essentially the same whether the worker is called an employee or an independent contractor. Except that Paillet and Bob performed piece work and were paid a percentage of the employer's percentage of income they fit, completely, within the definition of employee. Thus, these two distinctions are insufficient, in light of

the "built-in" controls that govern the transport of cargo in interstate commerce, to tilt the determination favorable to PWS.

The Court also agrees with CCMI's argument that the distinctions argued by PWS do not make a difference. An employee is any individual employed to operate a commercial vehicle in interstate commerce. 49 C.F.R. § 390.5. Thus, the intent of the parties, or the terms used by the parties to define their relationship will not always control. Were Paillet and Bob engaged in their own trucking business, and had they been engaged under their own business name, there would be no doubt that an independent contractor relationship existed. However, Paillet and Bob were engaged in their individual capacities and under their individual social security numbers. Therefore, they were employees within the meaning of the law. *See Perry v. Harco Nat'l Ins. Co.*, 129 F.3d 1072 (9th Cir. 1997).

*B. Duty to Defend*

In determining whether CCMI has a duty to defend PWS, this Court is guided by Texas law. The Texas rule is referred to as the "eight corners" or "complaint allegation" rule that requires the trier of the facts to examine the complaint and insurance policy to determine whether a duty exists. *Canutillo School Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996). However, the Court may consider facts ascertained before, during and after the suit is concluded. *Id.*, (*American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153-54 (Tex. App.—Dallas 1990, writ dism'd)).

In the case at bar the employment status of Paillet and Bob was statutorily determined before the dispute arose. Federal regulations rendered the "employee"

issue moot. Thus, the manner that the facts were pled would not change the outcome. The Court determines that no duty to defend is created or arises out of the policy of insurance and none was compelled by the pleadings.

## VI. CONCLUSION

The Court concludes that Paillet and Bob were employees within the meaning of the law and, therefore, the exclusions apply. In addition, the Court concludes that PWS and Paillet are not entitled to a defense from CCMI. Within 20 days of the entry of this Memorandum and Order, CCMI may submit its request for attorneys fees and costs. PWS may submit a response within 10 days of CCMI's request.

It is so ORDERED.

Signed this 31st day of October, 2000.

KENNETH M. HOYT
United States District Judge